UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORGAL SEATTLE PARTNERSHIP,

    Plaintiff,

  v.

NATIONAL SURETY CORPORATION, *et al.*,

    Defendants.

Case No. C11-0720RSL

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on "Defendant's Motion for Partial Summary Judgment." Dkt. # 27. Plaintiff, the operator of an apartment building, seeks insurance coverage for repair costs and business interruption losses incurred when rot compromised the structural integrity of exterior decks on the building. Defendant seeks summary judgment on plaintiff's breach of contract and Insurance Fair Conduct Act claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party seeking summary dismissal of a claim "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1

materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

Plaintiff Norgal Seattle Partnership operates Charbonneau Apartments, a multi-family apartment building located at 1201 Boylston Avenue, Seattle, Washington. Defendant agreed to insure plaintiff from property damage at the apartment building from December 11, 2007, to December 11, 2008. In July 2008, plaintiff discovered that water had intruded into the structure causing rot. Plaintiff reported the loss to defendant and requested coverage under the insurance policy. Exemplary testing of certain exterior decks on all four exterior walls showed that almost 50% of the decks tested were in danger of collapse. Defendant determined that 32 out of 75 exterior decks with corner posts were likely in danger of collapse and offered to make payments for the repair of

---

[1] The Court has also considered the evidence provided by plaintiff with its motion for summary judgment (Dkt. # 29).

those 32 decks. Decl. of Michael S. Rogers (Dkt. # 28), Ex. C. Further investigation regarding the scope and cost of repairs and plaintiff's business income losses were undertaken. Defendant eventually made payments for repair costs totaling approximately $580,000. Dkt. # 29, Ex. 26.

On October 7, 2009, plaintiff's counsel sent defendant written notice that it was unhappy with the way its claim was being adjusted. Plaintiff specifically complained that it had not received status letters or responses to inquiries and that defendant was delaying consideration of plaintiff's business interruption claim. Plaintiff stated that the notice was provided pursuant to the Insurance Fair Conduct Act. Decl. of Michael S. Rogers (Dkt. # 28), Ex. D. On or about November 13, 2009, defendant paid $98,669 on the business income loss claim. Dkt. # 29, Ex. 26.

On June 21, 2010, plaintiff's counsel notified defendant that the repair project had been completed, provided "a copy of the final estimate from TR Eggert Construction as well as the final loss of business income calculation," and requested that the claim process be completed. Dkt. # 29, Ex. 25. Defendant noted that the underlying claim had been paid and closed in November 2009, but requested additional information in order to reopen its investigation. Dkt. # 29, Ex. 26. Engineering reports were provided, and defendant was given access to the building to conduct an inspection. Dkt. # 29, Ex. 31. Based on the information available after the repairs had been completed, defendant's engineer was unable to ascertain whether the post-November 2009 repairs were required because there was an imminent danger of collapse (a covered loss) or whether they were undertaken to repair rot, decay, or deterioration that did not endanger the structural integrity of the component (an uncovered loss). Dkt. # 29, Ex. 33.

On March 4, 2011, plaintiff's counsel wrote to the Office of Insurance Commissioner complaining that defendant had failed to provide status reports, had failed to make a coverage determination, and had failed to explain why additional time was

1  needed. Decl. of Michael S. Rogers (Dkt. # 28), Ex. E. This action was filed in state
2  court on March 24, 2011.

**DISCUSSION**

Defendant seeks (a) dismissal of plaintiff's breach of contract claim on the ground that it was not asserted within the two year contractual limitation period and (b) dismissal of the Insurance Fair Conduct Act claim on the ground that plaintiff failed to comply with the statutory notice provisions. Plaintiff argues that the Court should continue consideration of this motion and the remainder of the case management deadlines because defendant delayed disclosure of its independent adjuster's report.

**A. Breach of Contract Claim**

The insurance policy at issue bars suit against the insurer under the contract unless "[t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." Decl. of Michael S. Rogers (Dkt. # 28), Ex. F at NSC00067. The loss at issue in this case was the "loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused . . . by . . . [h]idden decay of the Covered Property." Decl. of Michael S. Rogers (Dkt. # 28), Ex. F at NSC00074. Although it is not clear exactly what plaintiff knew in July 2008, it became aware of a loss or damage that was potentially covered by defendant's policy and provided notice of the claim. Shortly thereafter, and no later than November 2008, plaintiff had removed portions of the exterior siding, exposed certain structural members that had decayed and were in a state of imminent collapse, and started repair work. Dkt. # 29, Exs. 3, 4, and 8. More than two years elapsed between the time the "hidden decay" involving a risk of collapse was exposed and the date on which this action was filed in March 2011.

Plaintiff argues that the contractual limitation period did not begin to run until it discovered the full extent of its loss by removing the last bit of exterior siding

from the building and revealing the last bit of hidden decay. Panorama Village Condominium Owners Ass'n Bd. of Directors v. Allstate Ins. Co., 144 Wn.2d 130 (2001), the case on which plaintiff relies, does not support this proposition. Interpreting policy language similar to that at issue here, the Washington Supreme Court found that the peril insured against continued only until the hidden decay was no longer out of sight. 144 Wn.2d at 140-41. Once the insured removed portions of the siding and was able to determine that there was a risk of collapse, the contractual suit limitation period began to run: there is no indication that a new limitation period started every time a piece of siding was removed.[2] Because plaintiff had removed portions of the exterior facade and disclosed the previously hidden decay by no later than November 2008, plaintiff's breach of contract claim is untimely.

In the alternative, plaintiff argues that defendant should be estopped from relying on the suit limitation provision because it continued to adjust plaintiff's additional claim for damages until March 2011.

> The doctrine of equitable estoppel rests on the principle that where a person, by his acts or representations, causes another to change his position or to refrain from performing a necessary act to such person's detriment or prejudice, the person who performs such acts or makes such representations is precluded from asserting the conduct or forbearance of the other party to his own advantage.

---

[2] It is important to note that plaintiff did not file a separate claim for coverage related to the later-uncovered decay. This is not a case in which the insured had no reason to suspect additional decay elsewhere in the structure and, when the previously-unknown decay was discovered, filed a new claim for coverage under the policy. If that were the case, the argument that the newly-discovered damage triggered a second suit limitation period would be stronger. Rather, all parties anticipated that, as the repairs progressed, additional decay would be uncovered. In keeping with this expectation, when plaintiff sought to recover the additional repair expenses, it tacked the demand onto its pre-existing claim. The suit limitation period for that claim had started to run by November 2008 at the latest, however, and it was incumbent upon plaintiff to file suit within the two year period.

Dickson v. U.S. Fidelity and Guaranty Co., 77 Wn.2d 785, 788 (1970). The party asserting estoppel must prove its elements by clear, cogent, and convincing evidence. Dombrosky v. Farmers Ins. Co. of Wash., 84 Wn. App. 245, 256 (1996). Plaintiff has not identified any act or representation inconsistent with the assertion of the suit limitation provision. Defendant did not tell plaintiff that it would waive the limitation provision or suggest that it would pay the additional amounts demanded if given a little more time. Defendant's communications with plaintiff during the relevant time frame invariably contained a reservation of all rights under the policy. Dkt. # 29, Exs. 26, 28, 31, and 33. The fact that the insurer proceeded to adjust a claim under its policy – as required by Washington law – does not automatically toll the limitation provision. Otherwise every limitation provision, regardless of the language used, would begin to run only after the insurer made its final coverage determination. Plaintiff, represented by counsel, is presumed to know the terms and conditions of its policy. Defendant apparently did nothing to mislead plaintiff into thinking that it should or could delay filing suit beyond the contractual two year limitations period. Plaintiff had every opportunity to timely file and did not do so.

**B. Insurance Fair Conduct Act Claim**

The Insurance Fair Conduct Act ("IFCA") authorizes "first party claimant[s] to a policy of insurance who [are] unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). In order to bring a claim under IFCA, however, the first party claimant "must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner" at least twenty days before filing suit. RCW 48.30.015(8)(a). The twenty-day window provides the insurer with an opportunity to cure any deficiencies or violations. "The

insurer and insurance commissioner are deemed to have received notice three business days after the notice is mailed." RCW 48.30.015(8)(a).

There is no indication that plaintiff provided the required notice to defendant. This litigation involves defendant's handling of the claim for additional repair and business interruption losses that was submitted to defendant in June 2010. Plaintiff has not identified, and the Court has not found, any letter to the insurer setting forth the basis for the various causes of actions asserted here.[3] In addition, plaintiff did not wait the requisite twenty days after providing written notice to the insurance commissioner. The letter to the insurance commissioner was apparently mailed on March 4, 2011.[4] By operation of the statute, the notice was received by the commissioner three business days later, on March 9, 2011. Plaintiff filed this lawsuit less than twenty days thereafter.

Plaintiff argues that any failure to comply with the notice requirements of IFCA were "technical" and should be overlooked in order to allow an injured party to obtain relief. Although the Washington Supreme Court has not yet addressed this precise issue, "generally the Court of Appeals has required strict compliance with all statutory notice claim provisions except as to the content of a claim." Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wn.2d 303, 316 (2002) (collecting cases under various statutes). Given the purpose of the notice requirement – to allow the insurer to correct violations before suit is filed – the "failure to comply with a statutorily set time limitation cannot be considered substantial compliance" with the statute. City of Seattle

---

[3] The one letter which specifically mentions IFCA involved an earlier dispute regarding business interruption losses that was resolved in November 2009.

[4] Plaintiff has not provided proof of service. For purposes of this motion, the Court assumes that the letter was mailed on the date indicated on its face.

1 v. Pub. Employment Relations Comm'n, 116 Wn.2d 923, 929 (1991).[5]

## C. Fed. R. Civ. P. 56(d) Continuance and Reopening of Discovery

Plaintiff asserts that it needs additional time to conduct discovery in order to respond to defendant's motion for summary judgment. In particular, plaintiff argues that defendant failed to produce a December 2008 independent adjuster's report (Dkt. # 32, Ex. J) until after the close of discovery, that the report suggests that defendant knew that additional repairs would be needed, and that the deposition of the independent adjuster and a second deposition of defendant's in-house adjuster are necessary to "establish that [defendant] was aware of the need for further investigation as early as 2008." Opposition (Dkt. # 32) at 11.

Defendant acknowledges that, through an unexplained oversight, it failed to timely produce the December 2008 report until after the discovery deadline passed on December 4, 2011. Plaintiff has not, however, explained why the disclosure of this document materially impacts the litigation or otherwise requires the reopening of discovery. Plaintiff argues that this report is a "smoking gun" because it shows that defendant "was aware that as of November 2008 only 25 of the 92 decks at the Insured Property had been inspected" and that "it was likely that additional damage would be uncovered requiring necessary additional investigation." Opposition (Dkt. # 32) at 4. Defendant's awareness of the extent of the investigation in 2008 and the possibility that additional covered losses had occurred is not in genuine dispute. Defendant clearly knew that only a representative sample of the exterior decks with corner posts had been tested: the record shows that it had the much more detailed report prepared by Mark

---

[5] Plaintiff's argument regarding the impact of Fed. R. Civ. P. 54(c) is misplaced. Plaintiff did not simply forget to request a form of relief to which the evidence shows it was entitled. Rather, plaintiff failed to comply with a statutory prerequisite and is therefore unable to pursue the statutory claim. A federal procedural rule cannot override or substitute for an element of a state law claim.

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 8

1  Uchimura related to the same site inspection.  In fact, defendant recounted the scope of
2  the investigation and resulting findings in a letter to plaintiffs dated March 10, 2009.
3  Decl. of Michael S. Rogers (Dkt. # 28), Ex. C.  The state of defendant's knowledge
4  regarding the limited scope of the initial investigation and the possibility that additional
5  repairs would be needed was established long before the independent adjuster's report
6  was produced in December 2011.

Nor does plaintiff explain why defendant's awareness of the need for further investigation is relevant to the issues raised in defendant's motion.  As discussed above, the mere fact that an insurer takes some time to investigate and adjust a claim under its insurance policy is not enough to trigger the doctrine of equitable estoppel.  Whether defendant was actively investigating to identify additional decks in need of repair, had negotiated a settlement of the claim based on the assumption that additional repairs would be necessary, or was sitting back waiting to see if plaintiff made any additional claims, the suit limitation provision established the window of time in which plaintiff could bring a cause of action under the property coverage provisions.  Absent clear, cogent, and convincing evidence that defendant made an admission, statement, or act that misled plaintiff into thinking the suit limitation provision would be waived, equitable estoppel does not apply.  Because the recently-disclosed adjuster's report does not touch on this issue, plaintiff has failed to show how additional discovery would enable it to present facts essential to its opposition.

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment regarding plaintiff's breach of contract and Insurance Fair Conduct Act claims (Dkt. # 27) is GRANTED.

Dated this 19th day of April, 2012.

*[signature]*

Robert S. Lasnik
United States District Judge